We'll hear the next case, Marvel Entertainment v. City of New York et al. Just hold on one moment. Okay. Good morning, your honors. I'm B. John Williams, counsel for O'Pallant Marvel Entertainment. With me at counsel table are my colleagues Nathan Wacker and David Foster. Marvel's position in this appeal embraces United Dominion, preserves the vitality of prudential lines, which has been second circuit law for 25 years and is consistent with the only regulations in place in 1998 that address the application of section 108 to consolidated groups. Those regulations were the same ones in effect when prudential lines was decided. The tax court read United Dominion to declare that no part of the consolidated non-operating laws can be attributable to a bankrupt member. That reading overrules presidential lines and if applied here creates a split with those circuits that have followed prudential lines. Excuse me, your honor. Your argument that there was a regulation in 1998? Yes, your honor. The tax court specifically said that a consolidated group member cannot have a separate NOL for a consolidated return year unless a specific consolidated return regulation allocates and apportions part of the CNOL to that member. No such regulation existed for a petitioner's short taxable year in 1998. Was the tax court just wrong about that? Yes, your honor, it was. What was the regulation? The examples that we mentioned in our briefs, one having to do with investment adjustment and one having to do with negative basis. Consolidated return regulations are a whole, an integrated whole. Those regulations exist when the Supreme Court decided United Dominion. Yes, your honor. Yet the Supreme Court in United Dominion says there's no regulation that authorizes this separate treatment. Your honor, the Supreme Court was dealing with a calculation issue, not with the apportionment. You just suggested that there were regulations in existence at the time and if those regulations were in existence when the Supreme Court heard United Dominion, yet that seems to undercut your position that indeed there were regulations that authorized it. Your honor, if I may, it does not undercut our position because the question in United Dominion was whether there was a regulation that prohibited the calculation of the net operating loss at the member level. The reasoning of United Dominion, the Supreme Court said there's a default rule. The Internal Revenue Code applies identically to every corporation whether they file a consolidated return or a separate return. Then secondly, you look at the code and you say, does the code itself modify the way the rule applies the consolidated returns? The Supreme Court said in United Dominion, no, it does not. And that's the same case that holds here. In United Dominion, however, the court said, okay, now we look at the consolidated return rules and we see whether they changed the normal rule under the code. And in that case, they were dealing with net operating losses. The code requires a net operating loss to be computed on an individual corporate level. The Supreme Court saw 1502-11 of the regulations and it said that regulation preempts the normal rule. The government was arguing that because there's an apportionment, you can calculate it at the member level. The court said, no, dash 11 is the exclusive means. When I look at this case, the big picture is the Marvel entities filed a consolidated return. Presumably, there were certain advantages to doing so. But then on the other end, even though they had 171 million in the CLD, they only used roughly half of it. Judge, that's exactly— By going on, now taking a different approach. No, no, it's not. It's the same approach. That is exactly the way Section 108 works. How is it the same approach if they're now, instead of filing as a single entity, they're calculating it as separate entities? How is that the same approach? The question of whether you can apportion a part of the CNOL as Prudential Line says you do and it becomes an asset of the bankruptcy estate is a different question than how you calculate it. The Supreme Court said there's a specific regulation that prohibits the calculation at the member level. The regulations in Section 108 do not address, they do not change the way Section 108 applies. Congress, in enacting Section 108, said it's a fresh start. You can get a fresh start either of two ways. Either there's a deferral or there's a complete exclusion. And in fact, the way the section works, it's both for an individual corporation. And when you get to the regulations in 1998, the regulations do not change the way Section 108 applies. So there's no windfall. It was completely anticipated by Congress. And Treasury did not modify that rule until 2003 when they issued proposed and temporary regulations that were adopted as final regulations in 2007. Further, Treasury itself acknowledged in 2007 the vitality of Prudential Lines in issuing a proposed regulation under the Consolidated Return Regulation applicable to Section 382. It specifically, in the Federal Register, mentioned that Prudential Lines was good law. Now, if United Dominion overruled Prudential Lines, then they would have said so. And in fact, in 2003, when the regulations were issued, the approach that they adopted, they specifically addressed the approach that the tax court eventually later adopted and said it was inconsistent with the legislative delegation of authority. The legislative delegation of authority in Section 1502 to the Treasury gives a very broad authority, but it is framed in terms of reflecting clearly the tax liability of the consolidated group and of each member in the group. And in 2003, Treasury said you couldn't simply reduce the CNOL, which is the position the tax court took here and the position the government argues for. Treasury said you couldn't do it consistent with the delegation of legislative authority. So the MARVEL, we believe, actually supports our position, and United Dominion continues to be good law. If you start with a default rule that the code applies identically to everybody and then you look to see if the code in our case changes that, it doesn't. And then you look to the regulations and say, do the regulations change the way the code is applied? And they don't in 1998. In fact, the two examples that are brief references show that there is an apportionment of the CNOL that's attributable to that member. And that's what is reduced under Section 108. So we know that the member is the taxpayer. We know that the consolidated group is not the taxpayer. We know that the consolidated group has a CNOL. It's a tax attribute of the group, not the member. And consequently, either there is nothing to reduce because the member corporation has no NOL or the member corporation has the portion that's apportioned to it, that's reduced, and then other tax attributes of the taxpayer are reduced. The government's position here, the tax court's position below, is contrary to that. It contradicts the statute. It contradicts the regulations. And it's inconsistent with prudential lines. And I'd have the rest of my time saved for rebuttal, Your Honor. Thank you. We'll hear from the government. Good morning. May it please the Court. Deborah Snyder for the Commissioner of Internal Revenue. For Marvel to win this case, it would be necessary for the Supreme Court to have decided United Dominion the opposite way. Under United Dominion, the only loss that's available for the Marvel group to reduce is the entire consolidated net operating loss without apportionment. The tax court's decision in this case is therefore correct. Counsel for Marvel mentioned that the member is the taxpayer, the consolidated group is not the taxpayer, but the issue in this case is not who is the taxpayer, but instead what is the taxpayer's net operating loss. And to see that Marvel's taxpayer argument is wrong, all we need to do is consider the statute that was at issue in United Dominion itself. That statute also applied to a taxpayer. It provided a 10-year carryback in the case of a taxpayer, which has a product liability loss. And we've cited that on page 33 of our answering brief. And, in fact, in its merits brief in the Supreme Court, the government made the same taxpayer argument that Marvel is making here, basically saying the government took the opposite position. Well, right. The party's positions were essentially reversed. And one of the things that the government had said is, well, because the statute applies to a taxpayer, the separate approach was correct. And the Supreme Court necessarily rejected that argument. The government lost, and the Supreme Court held that the CNOL could not be apportioned. And the Supreme Court explained that the reason for that is that the regulations for consolidated groups provided only one definition of NOL, consolidated NOL. So it was even fair to say that the concept of separate NOL simply does not exist. Let me ask you this, though. There's four entities that received a discharge in the Chapter 11 proceedings to reduce their debt. By your approach here, though, they don't get the full benefit of that, this fresh start idea of discharging some of the debt. Isn't that right? Well, they do because every member of the consolidated group has access to the entire consolidated net operating loss. But those four entities do suffer in the end, right? Well, no, because the losses that are reduced are the losses that they have access to. Who does that mean, access to? The way consolidated returns work is that every member of a consolidated group can use the entire consolidated net operating loss to offset its income. So actually, under Marvel's approach, what you have is a windfall because there's a chart on page 11 of our answering brief, and so you have FLIR, for example. It excluded over $160 million of COD income, and the group allocated to it only $82 million of the CNOL. So instead of reducing all of the COD income, which is what the statute requires, 108B says attributes shall be reduced by $1 for each dollar excluded. Instead of doing that, Marvel only reduced that $160 by $82. So actually, the government's position is how the statute's supposed to operate. And as the court was discussing earlier with Marvel's counsel, the way the statute's supposed to work is that the consolidated group got the benefit of the four members excluding the $171 million of COD income. That required the group to report less on its consolidated return. Then Marvel limited the amount of reduction required by apportioning separate losses. But then it, like all consolidated groups, carried the CNOL forward for the benefit of the entire group. So in effect, what Marvel is seeking is a windfall by not reducing all of the attributes. And, in fact, the tax— Isn't your answer really that that's too bad because it chose to file a consolidated return and because other members of the group that filed a consolidated return had a more healthy history than these four entities, they lose some of the benefit of it? I mean, that's the point of this whole case, right? Well, that's the way consolidated returns work, because the ability to file a consolidated return. Because separate companies don't get to offset their income against somebody else's losses. So a principal advantage of filing consolidated returns is that, in fact, they could do this. A member that had income could use losses from any other member, essentially, to offset that income. So that's the way consolidated returns work. And, in fact, what the Supreme Court said in the United Dominion is consistent with those principles. There's only one definition of net operating loss, and that's consolidated net operating loss, absent expressly applicable regulatory authority. And Marvel claims that there are two examples in the investment basis adjustment rules that provided it with that authority. But Marvel is wrong to rely on those examples for two reasons. First, as Marvel conceded in its opening brief, those examples illustrated other consolidated return rules. And what the Supreme Court said in United Dominion is that it's wrong to take a regulation that illustrated another consolidated return rule. In that case, it was the 1502-79 regulation. It's wrong to take a regulation from one context in consolidated returns and put it in another context. The second reason — oh, and, in fact, the regulations, those examples in the introductory paragraphs of the examples actually say the facts set forth are the only corporate activity. And that language appears on pages 21 and 29 of the addendum to Marvel's opening brief. What that means is that we can't assume other facts. We can't assume that there were other subsidiaries that had attributes that did not get reduced. The second reason that Marvel is wrong to rely on those examples is that they predated United Dominion and they were changed afterward. So to the extent the investment basis examples might have assumed some kind of apportionment in the background, neither party can rely on them now. Regarding prudential lines, that doesn't support Marvel's case for, again, two reasons. This court based its decision on prudential lines on the fact that the subsidiary was leaving the group. The court stated it's an opinion that confirmation of the reorganization plan will cause PLI's departure from the group. So as a result, there was a regulation on point in prudential lines. The court cited the Dash 79 regulation for the proposition that upon deconsolidation, any remaining NOL would be available to offset the subsidiary's income on its separate tax returns. That is the same regulation that the Supreme Court said in United Dominion does not apply to consolidated return years like the years at issue here. The second reason that prudential lines is off point is that it was decided 10 years before United Dominion. So that even if it were true that the two cases were inconsistent, then prudential lines would have been effectively overruled to that extent. But as I said, we think that they're perfectly reconcilable because the year that the court was focused on in that case was a separate return year. Marvel also mentioned in its argument they believe that United Dominion applied to the computation of the CNOL and not to the apportionment of the CNOL. But as I mentioned earlier, the Supreme Court in United Dominion expressly rejected the use of an apportionment regulation from a different context. So it's essentially the same question. In United Dominion, the question was whether separate NOLs could be apportioned to compare with product liability expenses. Here the question was whether separate NOLs could be apportioned to compare with COD income. And under United Dominion, the CNOL cannot be apportioned without expressly applicable regulatory authority, which Marvel did not have in this case. And in fact, nowhere in this litigation has Marvel identified what regulation it actually used to perform the apportionment. In other words — Counsel just suggested that there were regulations in existence. I think it was 1502-11. Well, that's the regulation the Supreme Court relied on in United Dominion to say there's only one definition of NOL, and that's the consolidated net operating loss. So that regulation, as interpreted by the Supreme Court, supports the Marvel's position in this case. I see that I'm out of time. Does the Court have further questions? No, thank you. Thank you. Thank you, Your Honor. It cannot be true that United Dominion says that there's no apportionment because prudential lines is still valid, and the Treasury Department said so basically at 72 Federal Register 296401. I want to respond to the government's argument that it is different. The argument the government made in United Dominion was that they could require a taxpayer to calculate an NOL at the member level when the regulations overruled the code that said that was the normal way you did it. In this case, there is no regulation overruling the way Section 108 is applied to member corporations. The government has it backwards. The government says that prudential lines involved a situation where a subsidiary was leaving the group, there were different tax years involved. Your Honor, by this Court's own opinion, the subsidiary was not leaving the group declaring bankruptcy. So the injunction that's issued to preserve the value of that asset in the bankrupt estate commences from the time the member files bankruptcy. The Court specifically did not rely on the fact that the member might leave the group as the basis for holding that it was an asset of the bankrupt estate. The question, they have it backwards. You don't need a permissive regulation. The code tells you what to do. If there's a regulation that changes the code and prohibits what you've done, then it overrules the code. But it is not, the taxpayer doesn't need to find a regulation supporting what Section 108 requires. Section 108 requires the taxpayer to reduce its tax attributes, not the tax attributes of the group. And the code, if there is no regulation that changes that, and there is none in 1998, then the code is what applies. That's the tax law. And that's the principle of the consolidated return regulations, and that's the reasoning that the Supreme Court used in United Dominion. They said there the regulation did overrule the code. We have your argument. Thank you, Your Honor. We will reserve decision.